ORIGINAL

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

MICROSOFT CORPORATION, )
Plaintiff, )
VS. ) NO. 05-144T
SIGNATURE P.C. LLC, a Rhode )
Island corporation a/k/a )
SIGNATURE COMPUTERS; KHANH VO,)
an individual, and JOHN VO, an)
individual, )
Defendants. )
___________________________________)

DEPOSITION OF:

HUNG "JOHN" VO

TAKEN ON

THURSDAY, DECEMBER 29, 2005

Reported by: EMILIA JACALONE

CSR NO. 7182

Deposition of HUNG JOHN VO, taken on behalf of the Plaintiff, at 1620 26th Street, 6th Floor, South Tower, Santa Monica, California, on Thursday, December 29, 2005, at 12:06 p.m., before EMILIA JACALONE, CSR NO. 7182, pursuant to NOTICE.

APPEARANCES OF COUNSEL:

FOR PLAINTIFFS:

PERKINS COIE, LLP
BY: KATHERINE M. DUGDALE, ESQ.
1620 26th Street
6th Floor, South Tower
Santa Monica, California 90404-4013

FOR DEFENDANTS:

ROBERTS, CARROLL, FELDSTEIN & PEIRCE
BY: DENNIS E. CARLEY, ESQ.
10 Weybosset Street
8th Floor
Providence, Rhode Island 02903-2808
(Telephonically present)

Q. Other than your employment at the Firestone Car Wash, have you been employed anywhere else?

A. No.

Q. Do you have any other source of income other than the Firestone Car Wash?

A. No.

Q. Are you currently involved in any computer-related employment?

A. No.

Q. When did you move to Irvine, to the Copper Leaf address in Irvine?

A. Approximately July of 2004.

Q. Prior to July 2004, where did you live?

A. 7 Arbor Street, Canton, Mass.

Q. That's Massachusetts?

A. Yes.

Q. How long did you live there?

A. Approximately one year.

Q. Prior to that, where did you live?

A. With my parents.

Q. Where do your parents live?

A. Quincy, Massachusetts.

Q. And how long did you live there?

A. Approximately two years.

MR. CARLEY: John, again, I'm going to have

to -- try to keep your voice up. You're traveling 3,000 miles here, so you gotta talk loud, okay?

THE WITNESS: Okay. I'm sorry about that. Let me move that speakerphone.

MS. DUGDALE: You know, I think this works as a microphone. As I move this, does it get louder?

MR. CARLEY: Yes.

MS. DUGDALE: Okay. I'm going to move the microphone right under Mr. Vo, because I assume I'm loud enough.

MR. CARLEY: I have no trouble hearing you, Katherine.

MS. DUGDALE: You probably have no trouble without the speakerphone.

THE WITNESS: Can you hear me now?

MR. CARLEY: Yes. I can, very good.

MS. DUGDALE: Okay. We've put the speaker right under him.

Q. Okay. You stated that you lived with your parents for two years in Quincy, Massachusetts?

A. Quincy, Massachusetts.

Q. What was that time period, if you can give me the years.

A. 2002, 2003.

Q. And then prior to that, where did you live?

A. Prior to that I live in also in Canton, Massachusetts.

Q. When did you first arrive in Massachusetts?

A. 1979.

Q. And where did you arrive from?

A. Refugee camp.

Q. And where was that?

A. Malaysia.

Q. When you first came to the United States, you moved to Massachusetts?

A. Yes.

Q. And that was in 1979?

A. Correct.

Q. And did you live in Massachusetts all of that time until recently moving to California?

A. Yes.

Q. I won't go back and test your recollection as to every place you've lived in Massachusetts.

Have you lived any other place in the U.S. other than Massachusetts or California?

A. No.

Q. Were you employed -- you said you were unemployed prior to working for the Firestone Car Wash when moving to California; is that correct?

A. Correct.

Q. Prior to moving to California, what was your employment?

A. I work for Signature Computers.

MR. CARLEY: Did you say Imaging Computer?

THE WITNESS: Signature Computers.

MR. CARLEY: Thank you.

BY MS. DUGDALE:

Q. And what time period did you work for Signature Computers?

A. I believe some time in '92 into 2003.

Q. Okay. So from 1992 to 2003, you worked at Signature Computers?

A. I'm sorry. Let me correct this. 1996. '96 to 2003, yes.

Q. Do you remember when in 2003 you left Signature Computers?

A. Approximately some time in June, I believe.

Q. Why did you leave Signature Computers in June of 2003?

A. The company closed.

Q. Just right there, you have to watch almost answering before I finish the question. Just so it's easier for your attorney to hear you and for the court reporter to take everything down.

I know it's, it's easy to try to think where I'm

Q. What were the locations for Signature Computer?

A. 1137 North Main Street. That's in Randolph, Massachusetts. I forgot the zip code.

Q. That's okay.

A. The other one is 1177 Jefferson Boulevard. That's in Warwick. And the zip I...

Q. That's Warwick?

A. Rhode Island.

Q. Warwick, Rhode Island?

A. Yes.

Q. Were you the purchasing manager for both locations?

A. Before 2003.

Q. So before 2003, you were the purchasing manager for both the Massachusetts and Rhode Island locations?

A. Correct.

Q. Okay. As the purchasing manager, I think you testified, I asked you previously did that include buying and selling of Microsoft software.

And you said yes; is that correct?

A. Correct.

MR. CARLEY: I object to that. It's been asked and answered.

MS. DUGDALE: Okay.

Q. And you said that you were the purchasing

is attached hereto)

BY MS. DUGDALE:

Q. Do you know why Jimmy Ho or Khanh Vo didn't guarantee the line of credit?

A. Because I was applying for the, the, purchasing merchandise for them.

Q. And that was your job as the purchasing manager?

A. Yes.

Q. And I think you referenced that some other vendors thought you were the president or, or owner of Signature Computers?

A. Correct, yes.

Q. You gotta let me finish.

A. Oh, I'm sorry.

Q. That's okay. When Signature was started, did you contribute any money to start the company?

A. No.

Q. Did you ever provide any of your personal money to help the Signature company?

A. No.

Q. Did you receive a salary from Signature?

A. Yes.

Q. Was it a, just a straight salary or did you also receive commission?

A. Straight salary.

Q. And you received a salary from 1996 until Signature closed in 2003?

A. Yes.

Q. Did you receive bonuses?

A. No.

Q. Did you receive anything other than just, you know, a paycheck for your regular stated salary?

A. Nothing.

Q. Other than working as the purchasing manager at Signature, have you owned or been involved with any other businesses in the computer industry?

A. No.

MR. CARLEY: Objection. If she took the word "owned" out of there, I wouldn't be objecting.

MS. DUGDALE: Okay. I see what you're saying.

Q. Other than working at Signature, have you worked for any other computer businesses?

A. No.

Q. Have you ever owned any other computer businesses?

MR. CARLEY: Objection.

BY MS. DUGDALE:

Q. Have you ever owned a computer business?

A. No.

MR. CARLEY: Katherine, may I interrupt?

your primary vendors?

A. There's a lot of vendor.

Q. Do you recall any that you used more than others? Let me finish.

Do you recall any that you used more than others?

A. Yes.

Q. Do you remember their names?

A. I don't recall their name. But if I look it over, then I will get the name.

Q. Okay.

A. We have lot of company for hardware. But software only limited, so.

Q. As the purchase manager, were you also involved in how Signature distributed computers with software installed?

A. No.

Q. Okay. Who was in charge of that?

A. Technician.

Q. And who was that?

A. Name of the technician?

Q. Yes.

A. David Thompson.

Q. Were you involved in purchasing software though that would be distributed with computers?

A. I'm sorry?

Q. Were you involved with purchasing software that would be distributed with computers?

A. It was my job. If they said they need some Microsoft software or Microsoft XP, or related software, so they asked me to order, so I order. And whatever they did, they, they sell, I don't know.

Q. So you didn't have any involvement then with whether that software was loaded onto computers or whether computers were sold with software loaded on them?

A. No.

Q. You said you were also involved in sales. What was your involvement with sales?

A. Sales, like some people come and they want to buy video card. So I sell them a video card.

Q. So you were there in the retail premises?

A. Right.

Q. Did you do sales for both Rhode Island and Massachusetts?

A. Massachusetts only.

Q. Okay. Massachusetts only for sales. But for, purchases for both Rhode Island and Massachusetts?

A. Right. We purchase the soft -- I mean the merchandise going to Massachusetts store. The Rhode Island store, whatever they need, they go to

Massachusetts to pick it up from there and then bring to Rhode Island.

Q. Were the, there was just one Signature company, though, that was running the two locations; is that correct?

A. Yes.

Q. And you were the purchasing manager for both locations?

A. I'm sorry?

Q. You were the purchasing manager for both locations?

A. Only one location.

Q. You said one location for sales. I'm just trying to clarify.

A. Yeah. Both retail location.

Q. Right.

A. When I purchase, everything's coming to Massachusetts. And then Rhode Island, whatever they need, they come to Massachusetts. They pick it up and they sell in Rhode Island.

Q. Did Rhode Island have a purchasing manager at their location?

A. No.

Q. So all of the Rhode Island software they would get from Massachusetts?

A. Correct.

Q. What percentage of Signature's overall business was software versus hardware?

MR. CARLEY: During what time frame?

MS. DUGDALE: During the, let's say, 2000 -- start with 2003.

THE WITNESS: I -- it's not my job.

BY MS. DUGDALE:

Q. Can you give me an estimate though, since you were the purchasing manager?

A. I don't recall.

Q. Did you also purchase hardware?

A. Yes.

Q. Now I am entitled to your best estimate. So as the purchaser of the hardware and software, if you have an estimate of, we'll start with 2003, as to how much software versus hardware, you know, whether it's 50 percent software, 50 percent hardware, or some variation of that?

A. They a retailer. They don't just build computer and sell just the computer. They sell individual items. Video card, hard drive, computer cases, mother board.

So customer can come and buy and build their own system. So software is very little.

Q. Does Signature also build systems for customers?